IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | 4:04-cr-116 |
| Plaintiff, | * | |
| v. | * | |
| THEODORE J. SAUERBERG, | * | |
| | * | SENTENCING MEMORANDUM |
| Defendant. | * | |

## I. INTRODUCTION

Before the Court is the sentencing of the Defendant, Theodore Joseph Sauerberg. On February 4, 2005, the Defendant pleaded guilty to one count of conspiracy to distribute MDMA, also known as "ecstacy", a Class C felony, in violation of 21 U.S.C. § 846 and § 841(b)(1)(C). In determining an appropriate sentence, the Court looks to all the factors articulated in 18 U.S.C. § 3553(a) to fashion a sentence that is sufficient, but not greater than necessary. This includes the mandatory instruction to consult the Sentencing Guidelines and take them into account. *See United States v. Haack*, 403 F.3d 997, 1002-1003 (8th Cir. 2005) (directing a court, at sentencing, to first determine the potential Guidelines range, then discern whether a traditional departure is appropriate under the Guidelines, and, finally, consider all other factors set forth in § 3553(a) to decide whether to "impose a sentence under the guidelines or a non-guidelines sentence"). Additionally, because a term of imprisonment is available in this case, the Court must heed the statutory admonition "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

## II.   DISCUSSION

### A.   *Advisory Guidelines Range*

Neither party objects to the Guidelines calculations arrived at by the Presentence Report.  The Court concurs with the Presentence Report calcuations.   Based on the parties' stipulation that the Defendant was responsible for 2,600 grams of MDMA or the equivalent of at least 1,300 kilograms of marijuana, the base offense level is thirty two.  The Defendant qualifies for a two level reduction pursuant to "safety valve" criteria set forth in U.S.S.G. § 5C1.2 and a further three level adjustment for acceptance of responsibility.  The total offense level is, therefore, twenty seven.  The Defendant is in criminal history category one.  The Guidelines sentencing range is between seventy and eighty seven months.   On a relatively minor, but related matter, the Court finds that the Defendant did not use an alias birth date and directs the Presentence Report amended to reflect this finding.  Accordingly, save the alias birth date matter, the Court adopts the Presentence Report .

### B.   *Departure Motions*

1.   *Defendant's motions.*

The Defendant makes several motions for downward departures from the Guidelines calculation stated above based on the Defendant's age, cooperation with the government, post-offense rehabilitation, voluntary withdrawal from the conspiracy, and sentencing disparity. Because the Defendant's youth and sentencing disparity are more aptly considered under the statutory factors listed in 18 U.S.C. § 3553(a), they are denied.   Likewise, the Court will consider substantial assistance under the Government's motion.  This leaves the Court to consider downwardly departing, in the

traditional sense, for post-offense rehabilitation and voluntary withdrawal.

     a.  *Post-offense rehabilitation*.

When truly exceptional, atypical post-offense rehabilitation can support a downward departure under U.S.S.G. § 5K2.0.  *United States v. Chapman*, 356 F.3d 843, 847-849 (8th Cir. 2004).  In particular, pre-arrest efforts "may better demonstrate a defendant's sincere desire to change his . . . life than post-arrest efforts that may be tainted by a motive to appear reformed." *Id.* at 849.  The Defendant ended his participation in the conspiracy in August 2001.  The Defendant did not, however, voluntarily disclose the nature of his offense to authorities.  The conspiracy lasted until October 30, 2002.  The Indictment was handed down on April 28, 2004, thirty-two months after the Defendant's voluntary termination from the conspiracy.  Since December 2002, he has worked as a rehabilitation technician at Craig Hospital in Englewood, Colorado — an acute care facility — working in the spinal cord and brain injury unit.  The Defendant is currently on the waiting list at the Denver School of Nursing to obtain a bachelor's degree in nursing, which his employer will help finance.  This Court allowed the Defendant to remain on bond in order that the Defendant could continue to care for his patients.

The Court of Appeals has rejected downward departures for rehabilitation for defendants merely reuniting with family, remaining drug free, or having the potential for rehabilitation.  *See United States v. Rodriguez*, 2005 WL 1606029 (8th Cir. July 11, 2005); *United States v. Rogers*, 400 F.3d 640 (8th Cir. 2005).  Here, however, the Defendant's pre-arrest actions are truly exceptional and evince a deep desire to forge a better life through a profession devoted to the care of others.  The Defendant's decisions occurred well before an Indictment in this case.  Accordingly, the offense level

will be reduced by three levels to reflect the Defendant's extraordinary rehabilitation. This leaves a total offense level of 24, resulting in a Guidelines sentencing range of between fifty-one to sixty-three months.

      b.  *Voluntary withdrawal*.

As to voluntary withdrawal, however, the Court cannot find that the Defendant's voluntary termination from the conduct prior to law enforcement intervention constitutes a basis for departing downward. The Defendant relies on *United States v. Nunemacher*, 362 F.3d 682, 689 (10th Cir. 2004), which allowed a district court to consider downwardly departing for a defendant's voluntary termination of criminal conduct before such conduct was brought to the attention of law enforcement. The Tenth Circuit reasoned that voluntary termination reflected that the criminal conduct was atypical and, therefore, worthy of consideration for a departure, if exceptional. *See id.* at 688 ("[V]oluntary termination of illegal activity and cooperation with law enforcement are already taken into account by an acceptance of responsibility adjustment . . . thus may not serve as a basis for departure unless [they] are present to an exceptional degree.") (citing *United States v. Benally*, 215 F.3d 1068, 1075 (10th Cir. 2000)). Voluntary termination likewise comes under consideration in the Eighth Circuit when a defendant's acceptance of responsibility is an issue. *United States v. Card*, 390 F.3d 592, 594 n.3 (8th Cir. 2004) (relying on a district court's application of U.S.S.G. § 3E1.1 n.1(b) to determine whether a defendant accepted responsibility for his conduct). Here, the Defendant has already received a three level reduction in his offense level for acceptance of responsibility. It should be noted the withdrawal by the Defendant in this case was not accompanied by a notification to authorities of his criminal conduct. His voluntary termination, after participating in the conspiracy for fifteen months and being a party to numerous criminal transactions, cannot be said to be so exceptional as to make his

criminal conduct atypical. The Defendant's withdrawal from the conspiracy is better discussed within the confines of 18 U.S.C. § 3553(a).

    2.    *Government's motion*.

The United States Government has also filed a motion for downward departure for substantial assistance. In its motion, the Government recommends a reduction of twenty percent in the Defendant's sentence. This would further reduce the Guidelines sentencing range to just under forty-one months at the lower end of the proposed range. The Court accepts the Government's motion as an appropriate recognition of the Defendant's assistance.

    C.  *Imposition of Sentence*

    1.    *The nature and circumstances of the offense*.

The Defendant is charged with entering and exiting a conspiracy that involved the distribution of MDMA. The entire conspiracy occurred from May, 1996, to on or about October 30, 2002. The Defendant's involvement began in May 2000 when he began assisting a co-conspirator in the distribution of MDMA. He received shipments of MDMA from California to distribute in Iowa. The Defendant's involvement ended in August 2001 when he received his last shipment of MDMA in Colorado Springs, Colorado. No other aggravating factors are present. None of the offense conduct involved violence, nor were firearms present. The offense level is derived solely on the basis of drug amounts. The Defendant believed that, up until the Indictment was filed in April 2004, his criminal conduct was all part of the past.

    2.    *The character of the defendant.*

The Defendant has absolutely no criminal history. All of the Defendant's criminal conduct,

including the present offense, occurred when he was twenty-one-years old or younger.[1]  To the Defendant's credit, he voluntarily terminated his participation in the conspiracy.  The Defendant's post-offense behavior has been exemplary, as set forth above.  His parents, a journalist and a counselor, wrote a compelling and thoughtful letter to the Court vowing continued support for their son.

While the Court can not consider such a lengthy criminal enterprise as an aberration under the Guidelines, the Defendant's behavior while part of the conspiracy does seem out of character and appears driven by his substance abuse addiction and greed.  An Eagle Scout and football team captain before college, the Defendant's turn to criminal behavior while in college certainly is a parent's worst nightmare — that it occurred at a small private religious college in rural Iowa makes the point that drug

---

[1]  Immaturity at the time of the offense conduct is not an inconsequential consideration.  Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five.  *See* Elizabeth Williamson, *Brain Immaturity Could Explain Teen Crash Rate*, Wash. Post, Feb. 1, 2005 at A01 (summarizing a recent National Institutes of Health ("NIH") study that suggests "that the region of the brain that inhibits risky behavior is not fully formed until age 25").   This is of critical importance in the area of criminal law.  The Sentencing Commission, in its studies, has deduced that recidivism rates drop as the age of defendants increase.  *See United States v. Nellum*, No. 2:04-cr-30-ps, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005 ).   The Supreme Court based its most recent death penalty decision, *Roper v. Simmons*, on studies indicating adolescents are less culpable for their actions than adults.  *See* 125 S. Ct. 1183, 1195 (2005) (stating that "as any parent knows and as the scientific and sociological studies respondent and his amici cite tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' (citations omitted) It has been noted that 'adolescents are overrepresented statistically in virtually every category of reckless behavior.'") (quoting Arnett, *Reckless Behavior in Adolescence: A Developmental Perspective*, 12 Developmental Review 339 (1992)).  While the *Roper* court held imposition of the death penalty is unconstitutional for those persons who committed the death-eligible crime before the age of eighteen, the recent NIH report confirms that there is no bold line demarcating at what age a person reaches full maturity.  While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant.

abuse is not limited to urban settings. Since then, however, the Defendant has rededicated himself to a purposeful life and, during his appearances in Court, has appeared remorseful. This is also evidenced in his parents concerns that his remorse was so intense the Defendant turned to contemplating suicide.

       3.    *The need for the sentence imposed*.

The Court can only conclude from Defendant's post-offense conduct that he has, in fact, learned from his experience with the United States criminal justice system, and has admirably moved to secure a better future for himself. The Court also recognizes that this is the one and only criminal offense in the Defendant's life and that the Defendant, given his career choice and family support, is at a very low risk to recidivate. The Court, however, is bound to impose a sentence that reflects the seriousness of joining an international conspiracy to distribute MDMA, particularly this Defendant's role as compared to his co-conspirators. The Guidelines sentencing range, however, is much too high in the context of the facts of this case. It does not adequately take into account the mitigating factors present.

A term within the range would be counter-effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society. In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-Indictment product of the Defendant's own desire to lead a better life. Indeed, a sentence within the Guidelines range may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking

into account the real conduct and circumstances involved in sentencing.

### III.   CONCLUSION

Accordingly, the Court orders that the Defendant be remanded to the custody of the United States Bureau of Prisons to be imprisoned for a term of fifteen months, to be followed by a supervised release term of twenty-four months, as is authorized under 18 U.S.C. § 3553(e) (permitting a sentencing court to impose a sentence below the mandatory minimum, including mandatory terms of supervised release).  The Court recommends to the Bureau of Prisons that the Defendant be placed as near his home in Colorado as possible.   The Court further recommends that the Defendant be placed in a minimum security or work camp facility and that the Defendant be given the earliest opportunity to enter a community correctional center.   Along with the standard conditions of release the Defendant shall participate in a program of testing and treatment for substance abuse, as directed by the Probation Officer, until such time as he is released from the program by the Probation Office.  The Defendant shall not use alcohol and/or other intoxicants during and after the course of treatment.  Neither shall the Defendant patronize business establishments where more than fifty percent of the revenue is derived from the sale of alcoholic beverages.

IT IS SO ORDERED.

Dated this 21st day of July, 2005

*Robert W. Pratt*

Robert W. Pratt

United States District Judge